UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ADAM FORREST PHILLIPS, * | |
| * | |
| Plaintiff, * | |
| * | |
| v. * | Civil Action No. 4:22-cv-10319-IT |
| * | |
| KILOLO KIJAKAZI, * | |
| ACTING COMMISSIONER * | |
| OF SOCIAL SECURITY, * | |
| * | |
| Defendant. * | |

MEMORANDUM & ORDER

September 7, 2023

TALWANI, D.J.

Plaintiff Adam Forrest Phillips seeks judicial review of a decision of the Acting Commissioner of Social Security ("Commissioner"), on the grounds that the decision is unsupported by substantial evidence and does not comply with controlling law. Pl.'s Mot. Reversal [Doc. No. 17]. Defendant Commissioner seeks to affirm the final decision, asserting that the findings are supported by substantial evidence in the record and that the Commissioner applied the correct legal standard. Def.'s Mot. to Affirm [Doc. No. 20]. For the following reasons, Plaintiff's Motion for Order Reversing the Commissioner's Decision [Doc. No. 17] is GRANTED IN PART and DENIED IN PART. Defendant's Motion to Affirm the Decision of the Commissioner [Doc. No. 20] is DENIED.

I. **Procedural Background**

Phillips applied for Social Security Disability Insurance benefits on June 6, 2019. Administrative Record ("A.R.") 242 [Doc. No. 16]. He alleged that his disability began on October 15, 2017. Id. at 270. Disability Examiners denied Phillips's application on November

26, 2019, id. at 89-90, and on reconsideration on February 3, 2020, id. at 102-03. On May 5, 2021, following a telephone hearing, an Administrative Law Judge ("ALJ") found that Phillips was not disabled from the alleged disability onset date of October 15, 2017, through December 31, 2020, the date Phillips was last insured. Id. at 17-27. The Appeals Council denied review of the ALJ's decision on January 4, 2022. Id. at 1. Phillips timely appealed to the district court pursuant to 42 U.S.C. § 405(g) on February 25, 2022. Compl. [Doc. No. 1].

## II.   Factual Background

### A.   Age, Education, and Work History

Phillips was forty-eight years old at the time of the alleged disability onset. A.R. 41-42 [Doc. No. 16]. He has a seventh-grade education. Id. at 44. Phillips holds a commercial driver's license (CDL) and has experience driving trucks, operating heavy machinery, and assisting in welding and metal fabrication. Id. at 43, 47-51.

### B.   Medical History

#### 1.   Depression, Anxiety, and Post-Traumatic Stress Disorder

On January 12, 2018, Phillips presented to Riverside Community Care where Christine Fitzgerald, LICSW, evaluated him for suicidal ideation. Id. at 413-15. At that time, he was admitted to inpatient psychiatric care at Harrington Memorial Hospital. Id. at 437. At admission, Gyorgy Varai, MD, noted a history of depression and suicidal thoughts, racing thoughts, poor sleep, and varied appetite. Id. at 442. Dr. Varai suspected bipolar illness rather than major depressive disorder. Id. at 444. At discharge on January 17, 2018, Dr. Badgaiyan found that Phillips's mood had improved. Id. at 1204-05.

On August 5, 2019, Richart Listerud, MD, noted some improvement in Phillips's anxiety, but continued sleep disruptions. Id. at 566. Dr. Listerud generally noted an anxious mood and

affect with intact judgment, but impaired insight. Id. at 567. On January 8, 2020, Phillips reported to Lauren Wisniewski, LMHC, that his mood was "up and down." Id. at 593.

Phillips was again admitted to inpatient mental health care on February 26, 2020, after presenting to the emergency room with depression, anxiety, and suicidal ideation. Id. at 697-701. On February 29, 2020, Phillips reported that his mood had greatly improved since admission. Id. at 736. On March 4, 2020, he also reported "feeling somewhat better" to Lauren Wisniewski, LMHC. Id. at 1311-12.

    2.    *Degenerative Disc and Degenerative Joint Disease of the Lumbar Spine*

Phillips reported significant back pain and an inability to stand for more than ten or fifteen minutes to Lauren Wisniewski, LMHC, on January 8, 2020. Id. at 593-94. On December 24, 2019, Sarah Mizzoni, DC, Phillips's chiropractor, ordered a radiological study. Id. at 788. Based on this study and her examination, Dr. Mizzoni diagnosed Phillips with segmental and somatic dysfunction of the sacral, lumbar, thoracic, and cervical regions; sciatica on his right side; cervicalgia; and pain in his thoracic spine. Id. at 789. She further stated that Phillips "is expected to make good progress and recovery," although she also indicated that "it is reasonable to believe that his recovery may take longer than an average patient with an uncomplicated case." Id. On January 6, 2020, Phillips reported that his pain had an intensity of 7 out of 10 approximately 70% of the time. Id. at 792. Between August and October 2020, Phillips generally indicated that his pain was a 4 or 5 out of 10 between 50% and 60% of the time, reporting an improvement from earlier visits. Id. at 869, 871, 873, 1261.

Christopher Cerniglia, DO, interpreted findings from MRI imaging on December 4, 2020. Id. at 1269-70. Dr. Cerniglia summarized his findings as "[m]ultilevel, multifactorial degenerative changes of the lumbar spine with varying degree of spinal canal stenosis and

3

foraminal narrowing. Findings most severe at the L4-5 level [where] there is severe neuroforaminal narrowing." Id.

On February 16, 2021, Dr. Mizzoni completed a Residual Functional Capacity Questionnaire provided by Phillips's counsel. Id. at 1375. On this form, Dr. Mizzoni opined that Phillips suffered from "[s]egmental dysfunction of lumbar, sacral, and thoracic regions w[ith] associated pain in regions." Id. at 1376. Symptoms included "[p]ain, joint stiffness and muscle spasm." Id. She further concluded that Phillips could sit for six hours in an eight-hour workday, and that he could stand or walk for no more than 30 minutes at a time, up to four or five hours in a workday. Id. Dr. Mizzoni also estimated that he would need three to four unscheduled breaks of ten to fifteen minutes each. Id. She checked a box indicating that she estimated Phillips would likely be absent from work "[m]ore than four times a month" as a result of his conditions, the maximum option provided on the form. Id. at 1377. However, when asked if Phillips was "physically capable of working an 8 hour day, 5 days a week employment on a sustained basis," Dr. Mizzoni stated that the answer would depend on the level of physical activity the labor involved, indicating the answer to be "no" if the work required "[m]oderate labor." Id.

    C.    *ALJ Hearing Testimony*

At the ALJ hearing, Phillips testified to his education and work experience as detailed above. Id. at 43-51. He also testified that his back is "messed up," and that he suffers from anxiety, depression, and panic attacks. Id. at 56. He further testified to various mental and physical limitations, including an aversion to noisy environments and being around more than five or six people because they trigger his anxiety, difficulty functioning due to depression one out of three days, an inability to sit for longer than ten minutes due to back pain, and difficulty carrying more weight than a gallon of milk and picking items up from the ground. Id. at 56-59,

61-63. He testified that medication sometimes reduced his pain from an 8 out of 10 to a 6 out of 10, id. at 60, but twisting in the wrong way could cause pain, "beyond a 10" out of 10. Id. He estimated that he spends three quarters of the day laying down. Id. at 62.

### III.     Legal Standard

####    A.     *Standard of Review*

Under 42 U.S.C. § 405(g), a district court has the power to affirm, modify or reverse a decision of the Commissioner, with or without remanding the cause for a rehearing. The district court must make its decision based on the pleadings and transcript of the record before the Commissioner. Id. Where the Commissioner's findings are supported by "substantial evidence" and conform to relevant law, they are conclusive. See Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018); see also Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (court must affirm Commissioner's decision "even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence").

Substantial evidence review is deferential; while "more than a scintilla of evidence is required to meet the benchmark, a preponderance of evidence is not." Purdy, 887 F.3d at 13 (internal quotation marks omitted). Substantial means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (internal citation and quotation omitted). However, the decision of the ALJ is "not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Sacilowski v. Saul, 959 F.3d 431, 437 (1st Cir. 2020) (internal quotation omitted). The court can reverse the Commissioner's final decision when the underlying facts and law are such that the agency has no discretion to act in any manner other than to award or deny benefits. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001). But if a court reverses the Commissioner's

decision where there is no clear entitlement to benefits on the basis of the record before the court, the court must remand for further proceedings. Id. at 12 ("When an agency has not considered all relevant factors in taking action, or has provided insufficient explanation for its action, the reviewing court should ordinarily remand the case to the agency.") (citation omitted).

B.  *Social Security Disability Standard*

An individual is considered disabled if he or she is "[unable] to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Under the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether or not an individual is disabled. See 20 C.F.R §§ 404.1520(a), 416.920(a).

> The hearing officer must determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or medically equals an impairment listed under 20 C.F.R. Part 404, Subpart P, Appendix 1, and meets the duration requirement; (4) whether the claimant has the residual functional capacity to perform his past relevant work; and (5) whether the impairment prevents the claimant from doing any other work considering the claimant's age, education, and work experience.

Sastre v. Astrue, 870 F. Supp. 2d 267, 274 (D. Mass. 2012) (citing 20 C.F.R. § 416.920).

In the first four steps, the claimant bears the burden of establishing disability within the meaning of the Social Security Act. See Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001). "Once the claimant has established that he is unable to return to his former employment, the burden shifts to the Commissioner to prove the fifth step, that the claimant is able to engage in substantial gainful activity that exists in significant numbers in the national economy." Sastre, 870 F. Supp. 2d at 274.

In determining a claimant's residual functional capacity, the ALJ must generally articulate how persuasive she finds each medical opinion. 20 C.F.R. § 404.1520c(b). Specifically, the ALJ considers (1) how well the medical record supports the opinion; (2) how consistent the opinion is with the record; (3) the provider's relationship with the claimant; (4) the provider's level of specialization; and (5) other factors. 20 C.F.R. §§ 404.1520c(c)(1)-(5). Because the first two factors, supportability and consistency, are most important, the ALJ must generally explain how she considered those factors in evaluating a medical source's opinion. 20 C.F.R. § 404.1520c(b)(2). However, some evidence is "inherently neither valuable nor persuasive" and the ALJ need not provide any analysis about how the evidence was considered. 20 C.F.R. § 404.1520b(c).

## IV.   The ALJ's Decision

The ALJ determined that Phillips (1) did not engage in substantial gainful activity during the period between October 17, 2017, and December 31, 2020; (2) had severe "medically determinable impairments [that] significantly limit[ed] [his] ability to perform basic work activities," namely "depressive disorder, anxiety-related disorder, history of PTSD, degenerative disc and degenerative joint disease of the lumbar spine"; (3) did not have an impairment or combination of impairments that met the severity requirements of a listed impairment; (4) had the residual functional capacity to perform a full range of work at all exertional levels (with certain non-exertional limitations) between October 17, 2017 and September 1, 2019, and could perform work at the light exertional level (with limitations) between September 2, 2019 and December 31, 2020; and (5) could perform jobs that existed in significant numbers in the national economy. A.R. 20-27 [Doc. No. 16].

The ALJ considered Phillips's mental health impairments and found that they justified some non-exertional limitations to his employment conditions. Id. at 23. The ALJ found that Phillips's physical impairments began primarily in September 2019. Id. at 24. She further found that Phillips showed "some multilevel multifactorial degenerative changes of the lumbar spine with varying degrees of spinal canal stenosis and foraminal narrowing, most severe [a]t the L4-5 level," and that his pain improved from a 7 out of 10 approximately 70% of the time in January 2020, to a 4 to5 out of 10 approximately 50-60% of the time in November 2020. Id. The ALJ determined that, as of September 2, 2019, in addition to the mental health limitations, Phillips was limited to work at the light exertion level. Id. He could stand, walk, and sit for six hours in an eight hour workday; occasionally stoop, crawl, and climb ramps and stairs; and never climb ladders, ropes, or scaffolds. Id. He was also to avoid "concentrated exposure to temperature extremes, heights, vibrating surfaces and tools." Id.

The ALJ's evaluation of Dr. Mizzoni's opinion reads, in its entirety:

> The opinion of Sarah Mizzani [sic], D.C. is partially persuasive. She has been treating the claimant since December 2019, and her limitations are generally consistent with the claimant's treatment notes showing some ongoing pain, but a positive response to treatment and no documentation of gait abnormalities. However, the undersigned has found the notation that the claimant would miss four or more days or work each month due to his back pain to be unpersuasive. This is unsupported by his treatment record. This opinion is therefore partially persuasive.

Id. at 25.

The ALJ determined that Phillips was unable to perform any past relevant work. Id. Considering his age, education, work experience, and the residual functional capacity determined in her opinion, the ALJ determined, based on the testimony of a vocational expert, that Phillips could perform jobs that existed in significant numbers in the national economy. Id. at 26-27. Examples of jobs provided by the vocational expert that the ALJ determined Phillips could

perform between October 15, 2017, and September 1, 2019, included laundry worker 2, kitchen helper, and cleaner 2. Id. Between September 2, 2019, and December 31, 2021, the ALJ determined the jobs Phillips could perform included linen grader, flagger, shaker, merchandise marker, and package sorter. Id.

The ALJ concluded that Phillips was not disabled between October 15, 2017, the alleged disability onset date, and December 31, 2020, the date last insured. Id.

## V.     Discussion

Phillips argues that the ALJ improperly determined his residual functional capacity by failing to comply with controlling law in evaluating the opinion of Dr. Mizzoni. Pl.'s Mem. 5 [Doc. No. 18]. Specifically, Phillips asserts that the ALJ did not sufficiently explain her determination that Dr. Mizzoni's opinion was only "partially persuasive," and had "erred by picking and choosing from Dr. Mizzoni's opined limitations." Id. at 6-7.

The ALJ found Dr. Mizzoni's opinion about Phillips's expected absences from work to be unpersuasive. A.R. 25 [Doc. No. 16]. Phillips argues that the ALJ did not explain her analysis of the supportability and consistency factors as required by 20 C.F.R. § 404.1520c. Pl.'s Mem 7-8 [Doc. No. 18].

The Commissioner argues that a provider's statements that are merely estimates of a claimant's expected absences from work are "inherently neither valuable nor persuasive" under 20 C.F.R. § 404.1520b(c). Def.'s Mem. 5 [Doc. No. 21]. The regulations do not require the ALJ to explain the supportability and consistency factors for analysis of, among others, statements that a claimant is or is not "able to perform regular or continuing work." 20 C.F.R. § 404.1520b(c)(3)(i). The Commissioner contends that a statement about the number of days a claimant is expected to be absent from work is inherently a statement about the claimant's ability

"to perform regular or continuing work" and that the ALJ was therefore not required to explain her analysis of that opinion. Def.'s Mem. 5 [Doc. No. 21]. The Commissioner further argues that the ALJ was not required to explain her analysis because an estimate of a plaintiff's expected absences from work is not a medical opinion; it therefore does not fall within the requirement of 20 C.F.R. § 404.1520c and "is not entitled to any particular weight." Id. (internal citation omitted). Accordingly, any error in the ALJ's analysis of Dr. Mizzoni's opinion on absences did not prejudice Phillips because the ALJ was not required to provide the analysis at all. Id. at 5-6.[1]

The Commissioner's assertion that an estimate of absenteeism is not a medical opinion has some support. See Murray v. Commissioner, 2011 WL 4346473, at *7 (W.D. Mich. Aug. 25, 2011). "A medical opinion is a statement from a medical source about what [a claimant] can still do despite [the claimant's] impairment(s) and whether [the claimant] ha[s] one or more impairment-related limitation or restrictions." 20 C.F.R. § 416.913(a)(2). Further:

> Medical opinions in adult claims are about impairment-related limitations and restrictions in: (A) [a claimant's] ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching); (B) [a claimant's] ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting; (C) [a claimant's] ability to perform other demands of work, such as seeing, hearing, or using other senses; and (D) [a claimant's] ability to adapt to environmental conditions, such as temperature extremes or fumes.

---

[1] The Commissioner argues that, to the extent the ALJ erred, the error was harmless. Def.'s Mem. 8 [Doc. No. 21]. This contention is premised on the claim that the ALJ's adoption of Dr. Mizzoni's testimony in full would not result in a disability determination. Id. The vocational expert testified that tolerance for absenteeism is limited to five absences per year. A.R. 74 [Doc. No. 16]. Because Dr. Mizzoni opined that Phillips would be absent more than four times per month, and the vocational expert testified that this "would not in [her] opinion allow for competitive employment," the court cannot find that the error was harmless. A.R. 74 [Doc. No. 16].

10

20 C.F.R. § 416.913(a)(2)(i). Medical sources' statements about the amount of time a claimant is expected to be absent from work are therefore not medical opinions under the regulations. See id. The regulations therefore did not expressly require the ALJ to explain how she considered the supportability and consistency factors when evaluating Dr. Mizzoni's statements. 20 C.F.R. § 404.1520c(b)(2) ("[W]e will explain how we considered the supportability and consistency factors for a medical source's *medical opinions*.") (emphasis added).

Nonetheless, "[a]n ALJ is required to consider evidence of absenteeism as part of their duty to consider all the evidence in the record when rendering their decision." Ortiz v. Kijakazi, 2023 WL 2743351, at *9 (D. Mass. Mar. 31, 2023); Rosario Mercado v. Saul, 2020 WL 2735980, at *10-11 (D. Mass. May 26, 2020) ("Courts have established that an ALJ must address the absenteeism issue" and "the ALJ should have addressed the issue of how much [the claimant] would miss work and what impact that would have on his ability to hold a job."). Further, "remand is required whenever there is evidence of absenteeism that the ALJ has clearly ignored or contradicted without explanation" because consistent absenteeism can preclude full-time employment. Ortiz, 2023 WL 2743351, at *9; Lopez-Lopez v. Colvin, 138 F. Supp. 3d 96, 113-14 (D. Mass. 2015) ("By failing to address this evidence [of expected absences and its impact on ability to work], the ALJ clearly breached his duty. The case must be remanded so that he can consider these matters."); see Sacilowski v. Saul, 959 F.3d 431, 435-36 (1st Cir. 2020).

The ALJ considered Dr. Mizzoni's opinion that Phillips would be absent from work more than four days per month and found it "unsupported by [Phillips's] treatment record" and thus unpersuasive. A.R. 25 [Doc. No. 16]. The decision does not provide any additional explanation for dismissing the evidence in the record of expected absences. The record reveals self-reported pain between a 4 and 7 out of 10, between 50% and 70% of the time. A.R. 792, 869, 871, 873,

1261 [Doc. No. 16]. Further, the ALJ found that Phillips had severe impairments, including degenerative disc and degenerative joint disease of the lumbar spine. Id. at 20. It is not facially obvious why a treatment record revealing lumbar spine degeneration and periods of back pain reaching as high as a 7 out of 10 approximately 70% of the time does not support a medical provider's opinion that the patient would sometimes be absent from work. The ALJ's conclusory statement that Dr. Mizzoni's opinion on Phillips's expected absences is "unsupported by his treatment record" and therefore amounts to "contradict[ing] [evidence of absenteeism] without explanation." Id. At 25; Ortiz, 2023 WL 2743351, at *9. As a result, Phillips's claim must be remanded to the Social Security Administration.[2]

## VI.     Conclusion

For the foregoing reasons, Plaintiff's Motion for Order Reversing the Commissioner's Decision [Doc. No. 17] is GRANTED IN PART and DENIED IN PART, and Defendant's Motion to Affirm the Decision of the Commissioner [Doc. No. 20] is DENIED. The claim is remanded to the Social Security Administration for further consideration consistent with this opinion. Phillips's request for a de novo hearing is DENIED.

IT IS SO ORDERED

September 7, 2023                              /s/ Indira Talwani
                                               United States District Judge

---

[2] Because the court finds that remand is justified based on the ALJ's lack of explanation for her contradiction of evidence of absenteeism, an analysis of Phillips's second argument that the ALJ cherry-picked evidence is unnecessary. However, for clarity on remand, the court concludes that this argument is without merit. On its own, the ALJ's finding that a portion of an opinion was unpersuasive does not justify remand simply because that portion tended towards finding a disabled status.